CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 29 2008

JOHN F. CORCORAN, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| STACY A. GRIFFIN,<br>　　　Plaintiff, | )<br>)　Civil Action No. 7:07-cv-00441<br>) |
| v. | )　MEMORANDUM OPINION<br>) |
| COMMONWEALTH OF VIRGINIA,<br>et al.,<br>　　　Defendants. | )<br>)　By: Hon. James C. Turk<br>)　Senior United States District Judge |

Proceeding pro se, plaintiff Stacy A. Griffin brings this civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Griffin, an inmate at Patrick Henry Correctional Unit ("Patrick Henry") in Ridgeway, Virginia, alleges that defendants[1] have violated his constitutional rights by improperly classifying him as a gang member. Griffin seeks monetary damages[2] and injunctive relief. Defendants have filed a motion for summary judgment and Griffin has responded. Therefore, the complaint is ripe for the court's review. For the reasons that follow, the court will grant defendants' motion and dismiss Griffin's complaint.[3]

---

[1] Griffin originally named the Commonwealth of Virginia, the Virginia Department of Corrections ("VDOC"), June Kimbriel, Inspector General for the VDOC, Nick Broughton, Assistance Inspector General for the VDOC, and Garry Clore, Manager of the Gang Management Unit with the VDOC, as defendants in this action; however, by order entered October 17, 2007, the court dismissed all claims against the Commonwealth of Virginia and the VDOC because they are not "persons" subject to suit under § 1983. Griffin also filed a motion to amend his complaint to add Barry Kanode as a defendant, which was denied by order entered October 17, 2007. By letter received by this court on January 30, 2008, Griffin appears to request the voluntary dismissal of his complaint against defendants Kimbriel and Broughton. He contends that they "did not have full knowledge of Mr. Gary Clore['s] actions against [him] and that "Clore by his own actions is responsible for this injustice." Accordingly, Griffin's request will be granted and, thus, Clore remains as the sole defendant in this action. Clore correctly maintains that insofar as he is sued in his official capacity for monetary damages, he is immune from suit. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

[2] Griffin requests punitive damages in his original complaint and later requests $25,000.00; however, in his second response to the motion for summary judgment, Griffin contends that he is "not asking for money in this civil case."

[3] To the extent Griffin's complaint could be construed to assert claims under state law, the court will decline, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over such claims.

## I. Griffin's Claims

Griffin alleges that on August 8, 2007, Gary Clore, Manager of the Gang Management Unit with the VDOC, "identified" Griffin as an "'Aryan Nation's' [g]ang member" because of several tattoos. (Compl. at 2.) Griffin alleges that Clore subsequently informed Barry Kanode, Patrick Henry Superintendent, that Griffin was a member of the "'Aryan Nation's' gang," prompting charges against Griffin for owning "gang related materials" and placement on the Virginia Gang Database.[4] (Compl. at 2.) Griffin maintains that he has not received a tattoo in over ten years and that none of his tattoos are gang-related. Griffin contends that his tattoos are "Scandinavian tattoos" or "Runes" that "represent [his] native spirituality and culture heritage." (Pl.'s Second Resp. Mot. Summ. J. at 2.) Griffin further contends that he is not a gang member, but merely a member of the "Asatru Alliance," a "recognized religion by the Federal Government and the VDOC." (Pl.'s Second Resp. Mot. Summ. J. at 2.)

Griffin's particular concern appears to be that because the Virginia Parole Board has access to the Gang Database, his classification as a gang member will "impede [his] early release." (Compl. at 3.) Griffin requests "expungement of gang related charges," that he be deleted from the Gang Database, the return of his confiscated art work,[5] and to be reconsidered for parole. (Compl. at 2.)

## II. Standard of Review

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see

---

[4] The Gang Database was established pursuant to Va. Code § 52-8.6.

[5] Griffin contends that the confiscated artwork includes drawings of Pamela Anderson, a wolf, a time piece, Viking ships, and various unspecified "Runic" characters.

2

also Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986). The court must view the facts and the inferences drawn therefrom in the light most favorable to the non-moving party. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1004 (4th Cir. 1987). While viewing the facts in such a manner, courts look to the affidavits or other specific facts to determine whether a triable issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court "must perform a dual inquiry into the genuineness and materiality of any purported factual issues." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327. "Where no genuine issue of material fact exists," it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

### III. Analysis

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). In this instance, Griffin contends that his improper classification is an "abridgment of [his] civil rights." (Compl. at 3.)

Defendant Clore contends that he is entitled to qualified immunity from Griffin's § 1983 claims; thus, the court must address this matter prior to addressing Griffin's claims on the merits. Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or

3

constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Siegert v. Gilley, 500 U.S. 226 (1991). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [government] conduct." Saucier v. Katz, 533 U.S. 194, 205 (2001).

When a government official properly asserts qualified immunity, the threshold question that a court must answer is whether the facts, when viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right. See Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007) (citing Saucier, 533 U.S. at 201)). If the court answers in the affirmative, the next, sequential step is to ask whether the right was clearly established – that is, whether it would be clear to a reasonable officer that his conduct violated the asserted right. Id.; Miller v. Prince George's County, Md., 475 F.3d 621, 627 (4th Cir. 2007). The "answer to both Saucier questions must be in the affirmative in order for a plaintiff to defeat a [defendant's] motion for summary judgment on qualified immunity grounds." Clem v. Corbeau, 284 F.3d 543, 549 (4th Cir. 2002). The plaintiff "bears the burden of proof on the first question – i.e., whether a constitutional violation occurred," while the defendant bears the burden on the remaining question. Henry, 502 F.3d at 377-78.

With these principles in mind, the court must first identify the specific constitutional right allegedly infringed by the improper classification and then address whether Clore's conduct violated that constitutional right. See Orem v. Rephann, 523 F.3d 442, 445 (4th Cir. 2008). The Due Process Clause of the Fourteenth Amendment, which prevents the government from interfering with a constitutionally cognizable liberty or property interest, is the most appropriate constitutional protection in this instance. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569

4

(1972).

Changing a prisoner's classification generally does not deprive him of liberty under the Due Process Clause alone. Hewitt v. Helms, 459 U.S. 460, 468 (1983), overruled on other grounds by Sandin v. Conner, 515 U.S. 472, 479-84 (1995) (noting that liberty "interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); see also Tamez v. Buentello, 80 F. App'x 933 (5th Cir. 2003); Fultz v. Collins, 3 F.3d 440 (5th Cir. 1993) (finding that inmate did not state a constitutional violation when he claimed that prison improperly classified him as a gang member).

A liberty interest may be implicated, however, when state laws and prison regulations create a liberty interest to which due process protections apply. See Meachum v. Fano, 427 U.S. 215, 226 (1976). However, Griffin does not point to, and this court is not aware of, any Virginia laws or prison guidelines that create a liberty interest triggering due process rights in the instant circumstances.[6] See Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) (as long as the challenged conditions or degree of confinement is within the sentence imposed and is not otherwise violative of the Constitution, the security and custody classification of state prison inmates is a matter for state prison-official discretion whose exercise is not subject to federal procedural due process constraints). Indeed, courts have found that Virginia's classification scheme governing prisoners' custody, security, and good conduct earning levels does not create a liberty interest in avoiding changes in these classifications, because an inmate's status in each of these areas is subject to change, "based

---

[6] Virginia Code § 52-8.6, which authorizes the Gang Database, does not provide any process to challenge or alter the information entered into the database.

5

on his own behavior and the discretion of prison officials." Oliver v. Powell, 250 F. Supp. 2d 593, 605 (E.D. Va. 2002) (citing Garrett v. Angelone, 940 F. Supp. 933, 943 (W.D. Va. 1996)); accord Salas v. Sherrer, No. Civ. A. 06-5565(KSH), 2006 WL 3518629, at *3 (D.N.J. Dec. 5, 2006) (finding that inmate failed to point to any state statutory or regulatory law or statute that conferred a liberty interest in being free from the constraints imposed against inmates classified as gang members).

Griffin's argument that his classification as a gang member could adversely affect his eligibility for parole similarly does not invoke due process protections. "In the absence of some entitlement, a fear or hope about a future discretionary decision is too speculative to give [Griffin] a liberty interest." See Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir. 1991). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7 (1979). A liberty interest protected by the Fourteenth Amendment must amount to more than an abstract need or desire or a unilateral hope. Gaston, 946 F.2d at 344 (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972) and Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 465 (1981)). "Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it." Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989). Because the Virginia parole statutes provide that the decision to release a prisoner on parole is (with the exception of mandatory parole under Va. Code Ann. § 53.1-159) a discretionary one which is dependent on subjective evaluations and predictions of future behavior, "a prisoner cannot claim entitlement and therefore a liberty interest in the parole release." Gaston, 946 F.2d at 344; see also Farr v. Rodriguez, 255 F. App'x 925, 926 (5th Cir. 2007) (finding no due

process violation where inmate claimed that he was denied parole eligibility because of his classification as a gang member because inmate was not automatically ineligible for parole; parole is determined under state law by the offense of conviction and the discretion of the parole panel); Wills v. Telford Unit Committee, Civil Action No. 5:07-cv-150, 2008 WL 793741 (E.D. Tex. Mar. 24, 2008) (finding no due process violation where inmate claimed that classification as a gang member and subsequent disciplinary action may adversely affect his chances for parole because there is no constitutional right to release on parole and the placement of this factor on inmate's record does not affect a constitutionally protected right, but only the "mere hope" of release on parole).[7, 8, 9]

Because Griffin fails to allege a protected liberty interest, the court need not address whether the process for determining his classification was adequate. Indeed, Griffin fails to present any authority establishing that inmates are constitutionally entitled to a hearing prior to receiving a gang member designation. However, the court notes that Griffin did receive an adequate hearing concerning the disciplinary infraction he received for possessing gang-related materials and/or paraphernalia. Clore contends, through affidavit evidence, that the Gang Management Unit

---

[7] Regardless, Clore has submitted evidence in the form of an affidavit, uncontested by Griffin, that indicates that the listing of a prisoner's name in the Gang Database does not determine or influence that prisoner's custody level or change his suitability for parole. Indeed, a December 19, 2007 letter from the Virginia Parole Board indicates that Clore was denied parole on December 5, 2007, because of prior failures under supervision and a finding that he is unlikely to comply with the conditions of parole. Thus, it appears that Griffin's placement on the Gang Database did not affect his parole determination and Griffin provides no evidence to the contrary.

[8] To the extent that Griffin complains that this classification stigmatizes him among other inmates or can be accessed by other law enforcement agencies, the court notes that any claims of potential future injury in this instance similarly remain too speculative to establish a cognizable liberty interest.

[9] To the extent that Griffin alleges that his classification as a gang member violates the Equal Protection Clause of the Fourteenth Amendment, his claims fail under this analysis as well. See Taylor v. Clore, Civil Action No. 7:07-cv-00448, 2007 WL 2892681 (W.D. Va. Sept. 28, 2007) (finding that the VDOC's classification of gang member inmates as gang members is rationally related to the legitimate state interest of maintaining order in the prison).

conducted an investigation of several inmates, including Griffin, and found that Griffin was in possession of unspecified gang-related materials and/or paraphernalia. Further, the Gang Management Unit found that Griffin had tattoos which were consistent with gang affiliation and that Griffin admitted his identification.[10] Griffin was provided with a disciplinary offense report with a description of the offense, a penalty offer, and a notice of hearing on August 13, 2007, several days prior to the August 17, 2007 disciplinary hearing. Griffin was ultimately penalized with a reprimand and the confiscation of all collected materials. Griffin's appeal of the disciplinary determination was denied on August 28, 2007. Superintendent Kanode indicated in that denial that, despite Griffin's contentions to the contrary, Griffin was aware of the materials collected during the investigation and used at the hearing because they were collected from his property box and, further, that a mere challenge to the Gang Management Unit's knowledge and expertise was insufficient to overturn the disciplinary conviction. Thus, it appears that not only was there sufficient evidence to place Griffin on the Gang Database and support his disciplinary conviction, but also that the procedures used in determining whether a disciplinary infraction was committed satisfy procedural due process.[11, 12]

---

[10] Griffin supports his contention that he is not in a gang by providing the court with a book entitled The Little Giant Encyclopedia of Runes. See Sirona Knight, The Little Giant Encyclopedia of Runes, 133, 140, 217 (Sterling Publishing Co., Inc. 2000). He refers the court to various pages of that text which allegedly correspond with the tattoos located on his stomach. In particular, Griffin points to the "Algiz" and "Sowilo" tattoos on his stomach which he contends are merely runes that are a "very important part of [his] religion." (Pl.'s Resp. Mot. Summ. J. at 4.) A simple internet search of the algiz rune indicates that this rune is "used by various Neo-Nazi groups" and "expresses in a single symbol the raison d'etre of the National Alliance and of the movement of Aryan renewal." http://en.wikipedia.org/wiki/Algiz. Similarly, a search concerning the sowilo rune indicates that "the swastika is a double sowilo rune." http://rexcurry.net/nazism-national-socialist-german-workers-party.html and http://en.wikipedia.org/wiki/Fascist_symbolism. Thus, while the runes do appear to have some ancient legitimate applications, they also clearly have been used to symbolize modern Aryan or Neo-Nazi groups. Accordingly, it was not unreasonable for the Gang Management Unit to determine that, based on the history and well-documented current application of those particular runes, Griffin had at some point maintained an association with an Aryan or Neo-Nazi group.

[11] Griffin requests that this disciplinary charge be "expunged" from his prison record. An inmate has a limited right to have erroneous material expunged from his prison file. See Paine v. Baker, 595 F.2d 197 (4th Cir.
(continued...)

Under these principles, the court finds that Griffin's allegations fail to state any due process claim actionable under § 1983. First, he has no independent constitutional right to any particular classification within the VDOC system. Second, Virginia's state laws and prison regulations do not create any federally protected liberty interest in any particular classification. Accordingly, the court cannot find that Clore violated the Due Process Clause of Fourteenth Amendment when he allegedly labeled Griffin as a gang member and, thus, the court must grant the motion for summary judgment on qualified immunity grounds.

## IV. Conclusion

For the stated reasons, Griffin's motion to voluntarily dismiss his claims as to defendants Kimbriel and Broughton will be granted and defendants' motion for summary judgment will be granted.[13]

---

[11](...continued)
1979). To establish a right to have false information removed, an inmate must establish that: 1) specifically identified material is in his file; 2) the identified material is false; and 3) the information will be relied on to a constitutionally significant degree. Id. at 201; but cf. Johnson v. Rodriguez, 110 F.3d 299, 309 n.13 (5th Cir. 1997) (noting that Paine was decided prior to the decision in Greenholtz, 442 U.S. at 1, which rejected the theory that the Constitution protects a conditional liberty interest in parole not yet granted). However, before Griffin can assert such a right, he must first have made a formal request that the material be expunged. Id. at 202-03. Here, Griffin has not alleged that he made a formal request that the disciplinary conviction about which he complains be expunged. For that reason alone, the claim must be dismissed. Moreover, Griffin has failed to adequately establish that the evidence supporting this conviction was false.

[12] Griffin further requests the return of his confiscated "art work"; however, this claim is not suitable for consideration by this court. See Ward v. Johnson, 437 F. Supp. 1053, 1055 (D.C. Va. 1977) (citing Breeden v. Jackson, 457 F.2d 578, 581 (4th Cir. 1972)). Moreover, any intentional or negligent deprivation of personal property by a prison employee acting outside the scope of official policy or custom does not rise to the level of a constitutional violation so long as the state provides an adequate post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981). The Virginia Tort Claims Act is available to Griffin. See Wadhams v. Procunier, 772 F.2d 75 (4th Cir. 1985) (holding the remedies available under the Virginia Tort Claims Act to be sufficient post-deprivation remedies).

[13] Plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within thirty days of the date of entry of the court's Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to plaintiff and counsel of record for defendants.

**ENTER:** This 29th day of July, 2008.

/s/ James C. Turk
Senior United States District Judge